IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL CURTIS LOBATO,

     Plaintiff,

v.                                                    Civ. No. 14-753 WJ/GBW

JOHNA GONZALES,

     Defendant.

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Defendant's Motion for Summary Judgment (*doc. 31*). Being fully advised, I recommend that the Court grant summary judgment in favor of the Defendant.

## I.   BACKGROUND

This case concerns constitutional violations that Plaintiff alleges Defendant committed against him while incarcerated at the Taos County Adult Detention Center (TCADC). *See generally doc. 1.* Plaintiff was a prisoner at TCADC from April 14, 2014 to October 28, 2014. *Doc. 30* at 2. On August 20, 2014, Plaintiff, acting *pro se*, filed his Complaint in federal court under 42 U.S.C. § 1983, alleging violations of his constitutional rights and requesting monetary relief. *Doc. 1* at 5.

Plaintiff has been proceeding in this case without representation by counsel. As a result, the undersigned will liberally construe his Complaint to determine what claims he is asserting. *See Erickson v. Pardus*, 551 U.S. 89 (2007) ("A document filed *pro se* is to

be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted).  Plaintiff attached to his Complaint a twenty-seven page exhibit containing his writings drafted while in prison.  *See doc. 1-1.*  Broadly interpreting his Complaint and attached exhibit, the undersigned construes Plaintiff to allege the following eight claims:

1. Plaintiff was placed on severe lockdown for thirty days without paperwork;

2. Defendant failed to respond to Plaintiff's filing of grievances;

3. Plaintiff was required to pay for his own toilet paper;

4. Plaintiff had no access to a law library;

5. Plaintiff was denied phone calls to his attorney;

6. Plaintiff was denied participation in religious services;

7. Defendant allowed an improper visitor to see another inmate; and

8. Plaintiff's cellmate was denied dental care.

## II.   UNDISPUTED FACTS

1. Plaintiff was detained at TCADC at all times relevant to this lawsuit.  *See generally doc 1*; *doc. 31* at 3.

2. The Taos County Adult Detention Center Policy and Procedure contains the TCADC policies in effect at all times during Plaintiff's detention.  *Doc. 31* at 3.

3.  The TCADC Policy and Procedure was revised on September 9, 2014.  *Doc. 31 at 3.*

4.  Plaintiff at all times had access to prison grievance forms, and he submitted several grievances to Defendant regarding prison conditions.  *Doc. 31 at 3-4; doc. 30-26 at 2; see also docs. 30-29, 30-30, 30-31, 30-32, 30-33, 30-34, 30-35.*

5.  Defendant formally responded to several of Plaintiff's grievances.  *Docs. 30-40, 30-41, 30-42.*

6.  While detained at TCADC, Plaintiff had the ability to purchase items from commissary, including toilet paper and "indigent kits."  *Doc. 31 at 5; see also docs. 30-47, 30-48.*

7.  Plaintiff made several purchases of both toilet paper and indigent kits.  *Doc. 1-1 at 2; doc. 31 at 6; see also docs. 30-47, 30-48.*

8.  On multiple occasions, Plaintiff received toilet paper at no cost.  *Doc. 30-47 at 3, 4; doc. 30-48 at 2.*

9.  Plaintiff could speak to an attorney by telephone if the attorney's phone number was entered into the phone system or if Plaintiff purchased a phone card from commissary.  *Doc. 31 at 7; doc. 30-42 at 5.*

10. At all times, Plaintiff could write to his attorney or be visited by his attorney.  *Doc. 31 at 7.*

11. Plaintiff filed grievances alleging that he could not speak to his attorney by telephone, and TCADC asked Plaintiff to provide the phone number so that it could be entered into the phone system.  *Doc. 31* at 8; *doc. 30-41* at 5; *doc. 30-42* at 5.

12. In response, Plaintiff submitted to Defendant a list of phone numbers which did not include the phone number for his attorney.  *Doc. 31* at 8; *doc. 30-31* at 4.

13. TCADC does not have a law library, and Plaintiff could only access legal materials by contacting his attorney.  *Doc. 31* at 8.

14. Plaintiff did not submit a grievance regarding his allegation that Defendant refused to allow Plaintiff to attend religious services.  *Doc. 31* at 10; *see generally docs. 30-29, 30-30, 30-31, 30-32, 30-33, 30-34, 30-35.*

15. Under the pre-revised TCADC Policy and Procedure Chapter 4.19, a Class I Offense could result in confinement to segregation and loss of privileges for fifteen to thirty days.  *Doc. 31* at 11.

16. Plaintiff was placed in disciplinary lockdown on June 18, 2014 and released from lockdown on July 15, 2014.  *Doc. 1-1* at 5, 22.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden

of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The court's role is not to weigh the evidence or determine credibility, but rather merely to assess whether a genuine issue exists as to material facts requiring a trial.  *See Anderson*, 477 U.S. at 249, 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id.* at 257.  Furthermore, the court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 551-54 (1999).  However, "viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative."  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (internal quotations omitted); *see also Anaya v. CBS Broad. Inc.*, 626 F. Supp. 2d 1158, 1197 (D.N.M. 2009) ("The mere existence of a scintilla of evidence will not avoid summary judgment.").

## IV.   QUALIFIED IMMUNITY

Defendant asserts the affirmative defense of qualified immunity.  *Doc. 31* at 15.

Qualified immunity protects public officials from liability "insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When a defendant asserts qualified

immunity at the summary judgment stage, the burden shifts to the plaintiff, who must

clear two hurdles to defeat the defendant's motion.  The plaintiff must demonstrate, on

the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right

was clearly established at the time of the alleged unlawful activity."  *Lundstrom v.*

*Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (citations omitted).  If the plaintiff fails to

meet this burden, "the government official is properly spared the burden and expense

of proceeding any further . . . and should be granted summary judgment."  *Dixon v.*

*Richer*, 922 F.2d 1456, 1460 (10th Cir. 1991) (internal citations omitted).

## V.   CLAIM THAT PLAINTIFF WAS PLACED IN SEVERE LOCKDOWN (COUNT I)

While prisoners do not lose all constitutional rights upon confinement, "lawful

incarceration brings about the necessary withdrawal or limitation of many privileges

and rights, a retraction justified by the considerations underlying our penal system."

*Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)  Discipline of an inmate

"in response to a wide range of misconduct falls within the expected perimeters of the

6

sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).

Disciplinary segregation of an inmate does not itself give rise to a constitutional

violation so long as it is "consistent with reasonable penological practices." *Gee v.

Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

Plaintiff claims that he was locked in his cell without proper paperwork for thirty

days; conduct which he characterizes as severe. *Doc. 1* at 3. In his attachments to the

Complaint, Plaintiff explains that he was placed in lockdown from June 18, 2014 until

July 15, 2014. *Doc. 1-1* at 5, 22. While Plaintiff does not explain the precise reason for

this disciplinary action, he concedes that it occurred due to his commission of a

"[minor] infraction." *Doc. 1-1* at 18; *see also doc. 1-1* at 6 (Plaintiff stating that "[the

lockdown] is cruel punishment for what they said we [did] [their] own handbook states

it was [our] first violation . . ."). Defendant fails to clarify the reason for Plaintiff's

discipline, as the *Martinez* report and Defendant's Motion for Summary Judgment only

discuss disciplinary actions relating to events occurring in September and October 2014.

*Doc. 30* at 3-8; *doc. 31* at 10-14. However, Defendant does explain that under the pre-

revised prison policy, an inmate who commits a Class I Offense is subject to discipline

in the form of "confinement to segregation and loss of privileges for no less than 15

days but not more than 30." *Doc. 30* at 4. Regardless of the precise reason, all evidence

indicates that Plaintiff's lockdown from June to July constituted disciplinary

segregation under prison policy.

While Plaintiff evidently found this form of punishment objectionable, disciplinary segregation for a period of thirty days does not give rise to a constitutional violation. *See Gee*, 627 F.3d at 1192 (finding that "incarcerating [an inmate] for four weeks in an isolation cell with limited outdoor recreation" did not constitute a constitutional violation); *Sandin*, 515 U.S. at 486 (finding that the prison's decision to place the plaintiff in disciplinary segregation for thirty days "was within the range of confinement to be normally expected" for an inmate who engages in misconduct during incarceration).

Plaintiff also alleges that Defendant failed to provide him paperwork regarding disciplinary proceedings. *Doc. 1.* In the attachments to his Complaint, Plaintiff estimates that he was in lockdown for one week before Major Lorenzo Silva informed him of the reason for his disciplinary action. *Doc 1-1* at 5. This failure may have violated TCADC Policy and Procedure Chapter 4.19, which states that "detainees will receive a written statement of the charges, including a description of the incident and specific rules violated." *Doc. 30-19* at 1. However, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993). In addition, Plaintiff cannot establish a due process violation simply by alleging that he has not been provided notice of disciplinary charges against him. *See Speed v. Stotts*, 941 F. Supp. 1051, 1054-55 (D. Kan. 1996) (finding no violation of 14th Amendment due process rights where inmate was held in

administrative segregation without notice of disciplinary charges); *Dedrick v. Daniels*, 386 F. App'x 810, 811 (10th Cir. 2010) (finding no due process violation where prison failed to provide inmate with notice of disciplinary proceedings within twenty-four hours of incident). Therefore, Plaintiff's constitutional rights were not violated by TCADC's failure to provide paperwork.

Finally, Defendant asserts that she did not personally participate in the decision to place Defendant in disciplinary segregation. *Doc. 30-12* at 4. In a claim under 42 U.S.C. § 1983, "a defendant may not be held liable under a theory of respondeat superior." *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). The Supreme Court has held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). For example, a plaintiff may "succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

Here, Plaintiff does not even allege that Defendant had personal involvement in his allegedly severe discipline. *Compare doc. 1* at 2 (Plaintiff's Complaint asking "[w]hat

kind of administrator lets someone do that!") *with Wilson v. Montano*, 715 F.3d 847, 857

(10th Cir. 2013) ("The complaint alleges [Defendant] established a policy or custom of

holding citizens without pending criminal charges until the court filed orders of release

sua sponte.") *and Dodds*, 614 F.3d at 1206 ("Plaintiff has *shown facts* from which a

reasonable jury could infer Defendant knowingly created a substantial risk of

constitutional injury . . . .") (emphasis added).  Even construing Plaintiff's Complaint

broadly to include the suggestion that Defendant allowed her employees to keep him in

severe lockdown, this conclusory statement falls far short of demonstrating Defendant's

responsibility for a policy causing constitutional injury.  *See Murray v. City of Sapulpa*, 45

F.3d 1417, 1422 (10th Cir. 1995) ("[t]o survive summary judgment, nonmovant's

affidavits must be based upon personal knowledge and set forth facts that would be

admissible in evidence; conclusory and self-serving affidavits are not sufficient");

*Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1200 (D.N.M. 2010) ("In responding to a motion

for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on

suspicion . . .") (internal quotation marks omitted).

   Conversely, Defendant asserts that she "had no personal involvement on

Plaintiff's allegation that the thirty (30) day disciplinary lockdown was severe."  *Doc. 31*

at 18.  In the attachments to his Complaint, Plaintiff presents no facts indicating

Defendant's personal participation in his lockdown and instead appears to place the

blame on Major Silva.  *See doc. 1-1* at 6, 8, 11, 13, 20.  As Plaintiff has failed to allege facts

demonstrating that Defendant played any role in this matter or that Defendant failed to

adequately supervise her employees, there is no genuine dispute as to a material fact

and summary judgment should be granted as to this claim.

## VI.   CLAIM THAT DEFENDANT FAILED TO RESPOND TO GRIEVANCES (COUNT II)

Plaintiff next alleges that Defendant's failure to respond to his grievances

constitutes a deprivation of his constitutional rights.  *Doc. 1* at 3.  A prison's failure to

provide a grievance procedure for its inmates does not by itself provide a basis for a

constitutional claim because "[t]here is no independent constitutional right to prison

grievance procedures."  *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013);

*Barber v. Canadian Cnty. Jail*, No. 15-132-F, 2015 WL 2089854, at *6 (W.D. Okla. May 1,

2015).  In addition, the voluntary provision of an administrative grievance process

"do[es] not give rise to a protected liberty interest requiring the procedural protections

envisioned by the fourteenth amendment."  *Murray v. Albany Cty. Bd. of Cty. Comm'rs*,

211 F.3d 1278 (10th Cir. 2000).  Thus, the failure of a prison to respond to inmate

grievances is not a constitutional violation.  *See Murray*, 211 F.3d 1278 ("The failure to

respond to plaintiff's grievances did not impose an atypical and significant hardship in

relation to the ordinary incidents of prison life, and there is no indication that the failure

to respond inevitably affected the length of [his] sentence."); *Anderson v. Colorado Dept.

of Corrections*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (holding that

an inmate's § 1983 "allegations relating to the requirements of the Department of

Corrections grievance procedure . . .," including the failure to respond to the inmate's grievances, "do not support a due process claim because [the grievance procedure] do[es] not create any liberty interest in the incarcerated prisoner").

Here, TCADC provides prisoners with "unimpeded access to Detainee Grievance forms," which can be completed and deposited in a locked box within each housing unit. *Doc. 31 at 4.* Plaintiff filed many grievances during his detention at TCADC, and does not claim that he was denied access to the grievance procedure. *Doc. 30-11 at 4; docs. 30-29, 30-30, 30-31, 30-32, 30-33, 30-34, 30-35.* Instead, Plaintiff claims that TCADC failed to respond to his grievances, which caused him "emotional trauma" and "shock of mind." *Doc. 1 at 3.* However, Defendant stated that she "reviewed all TCADC records related to detainee grievances . . . for the time period of Plaintiff's detention in 2014," and Defendant provided her responses to many of the grievances in the *Martinez* report. *Doc. 30-10 at 5; doc. 30-40 at 2-5; docs. 30-41, 30-42.* Regardless, Plaintiff could not state a claim because, as noted above, the grievance procedure does not create an independent liberty interest for the inmates. As a result, Plaintiff cannot demonstrate that Defendant violated a constitutional right, and summary judgment is appropriate as to this claim.

## VII. CLAIM THAT PLAINTIFF WAS REQUIRED TO PAY FOR TOILET PAPER (COUNT III)

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. XVIII. However, the Eighth Amendment

"does not mandate comfortable prisons." *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998). In fact, prisons can impose restrictive and harsh conditions as long as such conditions do not "deprive inmates of the minimal civilized measure of life's necessities" or "constitute a substantial risk of serious harm." *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 753 (10th Cir. 2014).

Plaintiff fails to demonstrate a violation of his constitutional rights. On multiple occasions, Plaintiff has received toilet paper at no cost. *Doc. 30-47* at 3, 4; *doc. 30-48* at 2. On other occasions, Plaintiff has purchased rolls of toilet paper for $1.00 each. *Doc. 30-47* at 2; *doc. 30-48* at 1, 3. A reasonable jury could not find that charging $1.00 for a roll of toilet paper constitutes cruel and unusual punishment. *See Barber*, 2015 WL 2089854, at *5-6 (holding that prison conditions which included charging inmates $5.00 weekly for toilet paper failed to implicate the Eighth Amendment because there was no "sufficiently serious deprivation [or] deliberate indifference on the part of [Defendant]"). Plaintiff has not provided any evidence to suggest that the cost of toilet paper constitutes a serious deprivation, and therefore he fails to demonstrate that Defendant violated his constitutional rights as to this claim.

In addition, Plaintiff has not presented sufficient facts to satisfy the *Iqbal* standard for personal involvement. *See supra*, Section V. Plaintiff does not allege that Defendant violated his constitutional rights through her own actions, but rather that she allowed her employees to do so. *See generally doc. 1* at 2-3. Plaintiff claims that he was required

13

to purchase toilet paper and hygiene items from commissary, but he does not assert any facts demonstrating that Defendant was involved in that alleged violation of his constitutional rights. *Doc. 1* at 3. On the other hand, Defendant asserts that she "had no personal participation or dealings with Plaintiff . . . related to commissary purchases of toilet paper or the furnishing of toilet paper." *Doc. 30-11* at 5. As Plaintiff has failed to demonstrate any facts establishing that Defendant had personal involvement in his purchases of toilet paper, summary judgment is appropriate as to this claim.

## VIII. CLAIMS REGARDING ACCESS TO COURTS (COUNT IV & COUNT V)

Prison inmates have a constitutional right to access the courts, and "prison authorities . . . [must] provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, "access to a law library is only one of many constitutionally acceptable methods used to assure meaningful access to the courts." *United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999). Furthermore, "the state, not the inmate, has the right to choose among constitutionally adequate alternatives." *Love v. Summit County*, 776 F.2d 908, 914 (10th Cir. 1985). In the absence of a law library, a prison may satisfy its constitutional requirements by allowing inmates access to attorneys and access to a telephone. *See id.* at 910. To state a claim for denial of access to the courts, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance

program hindered his efforts to pursue a legal claim." *Lemmons v. Clymer*, 609 F. App'x 949, 956 (10th Cir. 2015).

### A. Claim That Plaintiff Was Denied Access to a Law Library (Count IV)

Plaintiff argues that he has been denied access to a law library.  Defendant concedes this fact as the TCADC facility does not have a law library.  *Doc. 30-11* at 6. Defendant has asserted that a detainee who wishes to request legal materials is directed to contact his attorney to acquire such legal materials.  *Id.*  Under TCADC Policy and Procedure Chapter 6.7, "[a]ll detainees will have access to counsel and will be assisted in making confidential contact with attorneys . . . ," which includes "telephone communications, uncensored correspondence, and visits."  *Id.*  TCADC assists inmates in accessing alternative sources of legal assistance, and therefore the lack of a law library does not deprive Plaintiff of his constitutional right to access the court.  *See Love*, 776 F.2d at 910.

Plaintiff's claim should alternatively be denied because he has failed to demonstrate standing to assert such a claim.  To establish standing, an inmate "must show that the alleged inadequacies of a prison's library facilities or legal assistance program caused him actual injury . . . such as the inability to meet a filing deadline or to present a claim."  *Lewis v. Casey*, 518 U.S. 343, 348 (1996).  An inmate cannot establish injury simply by showing that the prison failed to provide adequate assistance, but rather must "go one step further and demonstrate that the alleged shortcomings . . .

15

hindered his efforts to pursue a legal claim." *Clark v. Oakley*, 560 F. App'x 804, 807 (10th Cir. 2014); *see Montana v. Lampert*, 262 F. App'x 914, 918, (10th Cir. 2008) (holding that an inmate failed to state a cognizable claim under 42 U.S.C. § 1983 when he failed to plead "that the limitations purportedly placed . . . on his access to prison law library materials hindered his efforts to pursue a nonfrivolous claim").

Here, Plaintiff asserts that he was denied access to a law library and to "proper law books." *Doc. 1* at 5. Throughout his proceedings, however, Plaintiff fails to state any injury caused by the denial of these legal resources, such as the inability to meet a filing deadline or to present a nonfrivolous claim. *See generally doc. 1.* Accordingly, Plaintiff's claim that TCADC's lack of a law library violated his constitutional right to access the courts should be dismissed.

### B.  Claim that Plaintiff Was Denied Access to an Attorney (Count V)

Plaintiff claims that he was denied phone calls to his attorney on multiple occasions, but admits that he was allowed attorney phone calls on other occasions. *See Doc. 30-29* at 5; *doc. 1-1* at 4, 8. TCADC Policy and Procedure Chapter 6.7 states that "[a]ll detainees will have access to counsel and will be assisted in making confidential contact with attorneys . . ." and that "[s]uch contact will include telephone communications . . . ." *Doc. 30-16* at 2. According to Defendant, Plaintiff could have called his attorney in two ways: (1) Plaintiff could have used phones in cell pods if the attorney's phone number was entered into the system; or (2) Plaintiff could have used a

16

phone card purchased at commissary.  *Doc. 30-11* at 6; *doc. 30-42* at 5.  Defendant claims

that TCADC responded to Plaintiff's grievances by "asking Plaintiff for [his attorney's]

phone number so that it could be entered on the TCADC phone system."  *Doc. 30* at 16.

Plaintiff then submitted a list of phone numbers to Defendant, but this list did not

include a phone number for his attorney.  *Id.*

Even assuming that Plaintiff was unable to contact his attorney during the period

from July to September, in which he made his request and grievances, Plaintiff's claim

has no merit because he has not asserted any injury resulting from a denial of access to

an attorney.  In the attachments to his Complaint, Plaintiff states that he requested an

attorney phone call and received no response for several weeks.  *Doc. 1-1* at 1, 2, 6, 8.

Nowhere in his Complaint or its attachments, however, does Plaintiff allege any injury

arising from this denial, such as an inability to pursue a legal claim.  *See generally docs 1,*

*1-1.*

In addition, a prisoner cannot demonstrate an injury on the basis of denial of

attorney phone calls when the prison provides alternative methods of contacting a

lawyer.  *See Elrod v. Swanson*, 478 F. Supp. 2d 1252, 1278 (D. Kan. 2007) (holding that the

denial of attorney phone calls to a prisoner did not cause him to suffer an injury "when

there is no evidence showing that plaintiff could not have contacted his attorney

through other methods").  As stated in TCADC Policy and Procedure Chapter 6.7,

inmates can contact their attorneys not only by telephone but also by "uncensored

17

correspondence[] and visits." *Doc. 30-16* at 2.  Defendant asserts, and Plaintiff fails to dispute, that inmates "could at all times write their attorney or be visited by their attorney.  *Doc. 30-11* at 6.  Plaintiff has failed to establish that his constitutional right to an attorney was violated, and therefore this claim should be dismissed.

## IX.   CLAIM THAT PLAINTIFF WAS DENIED PARTICIPATION IN RELIGIOUS SERVICES (COUNT VI)

Defendant asserts that Plaintiff has failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act (PLRA), for his allegation that he was denied participation in religious services.  *Doc. 31* at 19-20.  Section 1997e(a) of the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that this provision requires "proper exhaustion" – that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  When a prisoner properly exhausts some, but not all, of the claims asserted in his complaint, a court should dismiss the unexhausted claims but proceed with the exhausted ones.  *Jones v. Bock*, 549 U.S. 199, 220-24 (2007).

Plaintiff has failed to exhaust administrative remedies for the claim that he was denied participation in religious services.  TCADC Policy and Procedure Chapter 6.8

18

provides a grievance procedure for detainees.  *Doc. 30-16* at 3.  The policy states that

detainees "have unimpeded access to Detainee Grievance forms," and may "deposit

[the forms] in the locked box for his or her unit."  *Id.*  Thus, in order to exhaust

administrative remedies, a detainee must first fill out a grievance form.  *Id.*  While

Plaintiff filed multiple grievances relevant to this case, none of these grievances raised

the issue of the alleged denial of participation in religious services.  *Doc. 30-11* at 4; *docs.*

*30-29, 30-30, 30-31, 30-32, 30-33, 30-34, 30-35*.  Thus, the claim that Plaintiff was denied

participation in religious services remains unexhausted and therefore is barred by the

PLRA.

     In addition, Plaintiff has again failed to demonstrate sufficient facts to satisfy the

*Iqbal* standard for personal involvement.  *See supra*, Section V.  Plaintiff claims that he

was denied participation in religious programming, but fails to demonstrate that

Defendant was responsible for this denial.  *See generally doc. 1.*  Plaintiff also fails to

assert facts establishing that the denial resulted from the administration of a policy with

which Defendant had personal involvement.  *See generally doc. 1.*  Thus, Plaintiff has

failed to allege personal involvement in any denial of participation in religious services,

and summary judgment is appropriate for this claim.

X.   **CLAIM THAT PLAINTIFF'S CELLMATE WAS DENIED DENTAL CARE (COUNT VII) AND CLAIM THAT DEFENDANT ALLOWED AN IMPROPER VISITOR TO SEE ANOTHER INMATE (COUNT VIII)**

Article III of the Constitution requires, as a precondition to considering the merits of a dispute, that a litigant have standing to bring a federal claim. *Foremaster v. City of St. George*, 882 F.2d 1485, 1487 (10th Cir. 1989). An action under § 1983 "must be based on a violation of Plaintiff's personal rights and not on the rights of someone else." *Barber*, 2015 WL 2089854, at *3. In other words, a plaintiff does not have standing to bring a complaint on behalf of inmates other than himself. *Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990).

Here, Plaintiff asserts two claims on behalf of other inmates who are not parties to this action: (1) that his cellmate was denied dental care; and (2) that the TCADC Major allowed an improper visitor to visit a female detainee. *Doc. 1* at 2; *doc. 1-1* at 23-24. Plaintiff fails to state how his personal rights were violated by either of these alleged events. *See generally doc. 1*. Thus, those claims raised on behalf of other inmates or based on events that involved other inmates, and not Plaintiff, should be dismissed.

XI.   **CONCLUSION**

Plaintiff's claims fail because his allegations, even if accepted as true, do not support a finding of a constitutional violation and therefore do not overcome qualified immunity. In addition, Count VI is barred by the PLRA's exhaustion requirement, and

20

Plaintiff does not have standing to bring Counts VII and VIII on behalf of other inmates.

Therefore, I recommend granting Defendant's Motion for Summary Judgment (*doc. 31*).

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**